IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMMANUEL F. STOCKER and | : | CIVIL ACTION |
| LEONETTE STOCKER | : | |
| | : | |
| v. | : | |
| | : | |
| GREEN, TWEED & CO., INC. | : | NO. 18-4503 |

**MEMORANDUM**

**Padova, J.**                                                                                       December 2, 2020

Defendant Green, Tweed & Company, Inc. ("GTC") has moved for reconsideration of those portions of our previous Memorandum and Order denying, in part, its Motion for Summary Judgment. For the reasons that follow, we deny the Motion.

**I.      LEGAL STANDARD**

"'The purpose of a motion for reconsideration . . . is to correct manifest errors of law or fact or to present newly discovered evidence.'" Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc., 602 F.3d 237, 251 (3d Cir. 2010) (quoting Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999). A proper motion for reconsideration under Federal Rule of Civil Procedure 59(e) "'must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice.'" Wiest v. Lynch, 710 F.3d 121, 128 (3d Cir. 2013) (quoting Lazaridis v. Wehmer, 591 F.3d 666, 669 (3d Cir. 2010)). "Because federal courts have a strong interest in finality of judgments, motions for reconsideration should be granted sparingly." Cont'l Cas. Co. v. Diversified Indus., Inc., 884 F. Supp. 937, 943 (E.D. Pa. 1995) (citation omitted). Accordingly, "[t]o state what may be obvious, the focus is on the gravity and overtness of the error." In re Energy Future Holdings Corp., 904 F.3d 298, 312 (3d Cir. 2018), cert. denied 139 S.

Ct. 1629 (2019), (citing Burritt v. Ditlefsen, 807 F.3d 239, 253 (7th Cir. 2015); Venegas-Hernandez v. Sonolux Records, 370 F.3d 183, 195 (1st Cir. 2004)).  "'It is improper on a motion for reconsideration to ask the Court to rethink what it had already thought through—rightly or wrongly.'"  In re Blood Reagents Antitrust Litig., 756 F. Supp. 2d 637, 640 (E.D. Pa. 2010) (quoting Glendon Energy Co. v. Borough of Glendon, 836 F. Supp. 1109, 1122 (E.D. Pa. 1993)). Therefore, "[m]ere dissatisfaction with the Court's ruling . . . is not a proper basis for reconsideration." Progressive Cas. Ins. Co. v. PNC Bank, N.A., 73 F. Supp. 2d 485, 487 (E.D. Pa. 1999) (citing Glendon Energy Co., 836 F. Supp. at 1122).

## II.     DISCUSSION[1]

GTC moves for reconsideration of our Order denying in part its Motion for Summary Judgment on three grounds.  GTC argues that we erred as a matter of fact and law in denying its Motion for Summary Judgment as to Emmanuel Stocker's hostile work environment claim because that claim was barred by the applicable statute of limitations.  GTC also asserts that we erred as a matter of fact and law in denying its Motion for Summary Judgment as to Stocker's Family Medical Leave Act ("FMLA") retaliation claim because we miscalculated the final date of his FMLA leave and thereby mistakenly determined that the temporal proximity of the discipline issued to Stocker on October 31, 2017 to the conclusion of his leave was unduly suggestive.  GTC further contends that we erred as a matter of fact and law in denying its Motion for Summary Judgment as to Stocker's claim that his employment was terminated as a result of race discrimination because we erred in considering certain evidence submitted by Plaintiffs.  We address these arguments in turn.

---

[1] As we write primarily for the parties, we do not repeat the extensive background information included in our prior Memorandum. See Stocker v. Green, Tweed & Co., Inc., Civ. A. No. 18-4503, 2020 WL 4437113 at *1-2 (E.D. Pa. Aug. 3, 2020).

A.      Hostile Work Environment

GTC moved for summary judgment as to Stocker's claim that he had been subjected to a hostile work environment in violation of Title VII, 42 U.S.C. §2000e et seq., on the ground that this claim was barred by the applicable statute of limitations.  The maximum limitations period for filing a charge of discrimination pursuant to Title VII is "three hundred days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e).  Stocker filed his Charge of Discrimination against GTC with the EEOC on December 27, 2017.  (Concise Statement of Stipulated Material Facts ("SF") ¶ 47.)  Consequently, the maximum limitations period for Stocker's Title VII claims would permit only claims based on discreet discriminatory acts that occurred on or after March 2, 2017.  However, "[u]nder the continuing violation doctrine, discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim; such acts 'can occur at any time so long as they are linked in a pattern of actions which continues into the applicable limitations period.'"  Mandel v. M & Q Packaging Corp., 706 F.3d 157, 165 (3d Cir. 2013) (quoting O'Connor v. City of Newark, 440 F.3d 125, 127 (3d Cir. 2006)).  To establish "a continuing violation, the plaintiff must show that all acts which constitute the claim are part of the same unlawful employment practice and that at least one act falls within the applicable limitations period." Id. at 165-66 (citing Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 (2002); West v. Phila. Elec. Co., 45 F.3d 744, 754-55 (3d Cir. 1995)).

Plaintiffs contend that George Landes, Stocker's direct supervisor, subjected Stocker to a hostile work environment from the time he became Stocker's supervisor in January 2016 until Stocker was terminated on March 7, 2017, including, but not limited to, disciplines that Landes imposed on Stocker between April 7, 2016 and March 7, 2017.  (See SF ¶¶ 15, 31-36, 41.)  We concluded in our previous Memorandum that because Stocker was disciplined by Landes and

3

terminated within the limitations periods for Title VII claims, Stocker's Title VII hostile work environment claim is not barred by Title VII's statute of limitations. See Stocker v. Green, Tweed & Co., Inc., Civ. A. No. 18-4503, 2020 WL 4437113 at *5 (E.D. Pa. Aug. 3, 2020). GTC contends that this conclusion constitutes an error of law because it depends on the date of Stocker's termination and only "discriminatory acts that are not individually actionable may be aggregated to make out a hostile work environment claim." Mandel, 706 F.3d at 165. However, GTC's argument ignores our conclusion that Stocker's Title VII hostile work environment claim was not barred by the statute of limitations because the claimed hostile work environment included Landes's March 7, 2017 discipline of Stocker. (See SF ¶¶ 35-36 (stating that, on March 7, 2017, Stocker was issued two disciplinary action forms for loitering, i.e., being present in his work area without actively working, on February 28, 2017 and March 1, 2017).) Thus, Stocker's hostile work environment claim involves a continuing violation that included an act (i.e., the issuance of two disciplinary action forms) that occurred on March 7, 2017, which is within the limitations period. We conclude, accordingly, that we did not commit an error of law in denying GTC's Motion for Summary Judgment as to Stocker's hostile work environment claim on the ground that the hostile work environment claim was barred by the applicable statute of limitations. Consequently, we deny the Motion for Reconsideration as to Stocker's Title VII hostile work environment claim.

  B.  FMLA Retaliation

GTC moved for summary judgment as to Stocker's claim that he was retaliated against for taking FMLA leave on the ground that he could not establish a causal link between his protected activity (use of FMLA leave) and any adverse employment action. In our previous Memorandum, we found that Landes disciplined Stocker on the day he returned from his FMLA leave by issuing

Stocker "a 'Level One' discipline for being inside of a yellow-lined safe work area on October 31, 2016 'without the required safety glasses and safety shoes' even though the location of the safety equipment had been moved while he was on leave." Stocker, 2020 WL 4437113, at *15 (quoting SF ¶ 33, Holmes Dep. at 43-44). We concluded, based on the evidence of this discipline, that the temporal proximity between Stocker's use of FMLA leave and Landes disciplining him on the day of his return from that leave was "'unduly suggestive'" and sufficient "'to create an inference of causality and defeat summary judgment.'" Id. at *16 (quoting Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 307 (3d Cir. 2012)).

GTC argues that we made an error of fact in our statement that Stocker returned from FMLA leave on October 31, 2016 because the FMLA only provides for 12 weeks of job-protected leave and Stocker was on leave for 20 weeks, from June 1, 2016 until October 31, 2016. See 29 U.S.C. § 2612(a) (stating that "an eligible employee shall be entitled to a total of 12 workweeks of [FMLA] leave during any 12-month period). GTC is correct that we erred to the extent that we referred to Stocker's entire 20 weeks of leave as FMLA leave.[2] Nonetheless, this error was not determinative.

Stocker was on a combination of FMLA and short-term disability leave from June 1, 2016 until October 31, 2016. (SF ¶ 42.) As we noted in our previous Memorandum, the record evidence shows that Stocker was disciplined by Landes **on the very day of his return** from that leave, "for being inside of a yellow-lined safe work area on October 31, 2016 'without the required safety glasses and safety shoes' **even though the location of the safety equipment had been moved**

---

[2] The parties' Concise Statement of Material Facts states that "Mr. Stocker sought and was approved for short-term disability and FMLA Leave on or about June 6, 2016 through October 31, 2016." (SF ¶ 42.) The parties do not specify what portion of this leave consisted of FMLA leave rather than short-term disability leave.

5

**while he was on leave.**" Stocker, 2020 WL 4437113, at *15 (emphasis added) (quoting SF ¶33, Holmes Dep. at 43-44). Landes thus disciplined Stocker for this violation **on the very first occasion** he had the opportunity to issue a discipline to Stocker after his return from his FMLA leave. We conclude that the temporal proximity of this discipline to Stocker's return from his combined FMLA and short-term disability leave was "unduly suggestive" and sufficient "to create an inference of causality and defeat summary judgment" even though this discipline was imposed several weeks after the first day on which Stocker's FMLA leave could be considered to have concluded. Lichtenstein, 691 F.3d at 307 (quotation omitted); see also id. (noting that "there is no bright line rule as to what constitutes unduly suggestive temporal proximity" (quotation omitted)).

We conclude that, while we misstated the type of leave that Stocker was on when he returned from his combined FMLA and short-term disability leave, this error was neither sufficiently grave nor sufficiently overt to require reconsideration of our decision to deny GTC's Motion for Summary Judgment as to Stocker's FMLA retaliation claim. See In re Energy Future Holdings Corp., 904 F.3d at 312 (citations omitted). Accordingly, we deny the Motion for Reconsideration as to Stocker's FMLA retaliation claim.

C. Race Discrimination

GTC moved for summary judgment as to Stocker's Title VII race discrimination claim on the ground that Stocker is unable to establish a prima facie case of discrimination under the burden shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Specifically, GTC argued that Stocker could not establish a prima facie case of discrimination because there is no record evidence that would show that his termination was motivated by his race. A plaintiff "must produce 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion.'" Leftwich v. Lew, Civ. A. No. 15-

6

300, 2015 WL 8773274, at *7 (E.D. Pa. Dec. 14, 2015) (alterations in original), aff'd sub nom. Leftwich v. Sec'y United States Dep't of the Treasury, 741 F. App'x 879 (3d Cir. 2018) (quoting Kier v. F. Lackland & Sons, LLC, 72 F. Supp. 3d 597, 608-09 (E.D. Pa. 2014)). "The 'central focus' of the *prima facie* case 'is always whether the employer is treating some people less favorably than others because of their race . . . .'" Id. (quoting Sarullo v. U.S. Postal Serv., 352 F.3d 789, 798 (3d Cir. 2003)). GTC also argued that it was entitled to summary judgment as to this claim because Stocker could not satisfy his burden of proving that its legitimate, nondiscriminatory reason for terminating his employment was pretextual. See Tourtellotte v. Eli Lilly & Co., 636 F. App'x 831, 842 (3d Cir. 2016) ("In the context of a challenge to a grant of summary judgment, at the pretext stage of *McDonnell Douglas* the appellant 'must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" (quoting Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006)).

In our previous Memorandum, we concluded that several of the disciplinary actions that were taken against Stocker, and that led to his discharge under GTC's progressive disciplinary policy, occurred under circumstances that gave rise to an inference of racial discrimination. We specifically considered the deposition testimony of Aaron Holmes, Stocker's union representative and a GTC employee, that Stocker was treated differently than other employees who were not African-American and that Landes disciplined Stocker for actions that would not result in discipline by most of GTC's supervisors. See Stocker, 2020 WL 4437113, at *7-8. As we discussed above, Landes disciplined Stocker for not wearing his safety equipment in a work area the day Stocker returned from his short-term disability leave on October 31, 2016, even though

GTC had changed the area where employees' lockers were kept while Stocker was on leave, so that Stocker had to cross into the work area in order to get his safety equipment. (Holmes Dep. at 43-44.) Holmes testified that Landes disciplined Stocker, giving him "a Level 1 write-up for not having his safety shoes on in a designated area" even though "the line for where you have to have [safety shoes] on is a very blurred line. It's not really clear. And most supervisors, you know, as long as you're not engaged in work, don't really care about that type of thing." (Id. at 21-22.) As Holmes further described, Stocker was treated differently from other GTC employees in this instance because, while "15 percent of the workforce" walked into the department without their safety equipment, most supervisors weren't sticklers about it, they just wanted their employees to be wearing their safety equipment in their work area, in front of their machines. (Id. at 119-20.)

In our previous Memorandum, we also considered Holmes's testimony that Stocker was treated differently than other employees regarding the written warning he received on April 7, 2016, after he "was observed by GTC supervisors Dan Boulay and David Brooks to be asleep on a chair inside the work area." See Stocker, 2020 WL 4437113, at *7 (citing SF ¶ 30). Holmes testified that Stocker "was on his break time. And it's always a gray area of what you can do on your break time. So you know, in our opinion, he was on his break time. He was off the shop floor. It used to be you could do stuff like that . . . ." (Holmes Dep. at 33-34.)

We also considered Holmes's testimony that Stocker was treated differently than other, non-African American employees with regard to his disciplines for having a cellphone out on the shop floor and for loitering. On November 9, 2016, Landes issued Stocker a written/verbal warning for having a cellphone out on top of his toolbox on the shop floor on May 31, 2016. See Stocker, 2020 WL 4437113, at *7 (citing SF ¶ 31; Holmes Dep. at 36-37). Holmes testified that, while having a cellphone out on the shop floor is against GTC's rules, it is not uncommon, and he

believes that it occurs about 30% of the time. (Holmes Dep. at 39.) Holmes has observed Landes see a worker whose cellphone was out and tell the worker to "put it away" or just ignore it, "[i]t all depends on who you are." (Id. at 40.) Holmes also testified that he had never known of anyone being written up for loitering when that individual was in his own work area and working. (Id. at 86-87.) Holmes testified that, during the ten years he has "been doing union stuff," loitering "was reserved for if you're in a different department where you shouldn't be, you know, like hanging out kind of. That was like the general interpretation." (Id. at 87.)

GTC argues that we erred in considering Holmes's testimony regarding Stocker's discipline for sleeping; Stocker's discipline for having his cellphone out, and Stocker's discipline for loitering. GTC maintains that we should not have considered Stocker's discipline for sleeping because Stocker himself admitted that he was sleeping and does not contend that he was disciplined for sleeping because of his race. (See E. Stocker Dep. at 95.) However, we did not rely on this evidence as establishing, in and of itself, that Stocker had suffered an adverse employment action due to his race, but as evidence showing that he was treated differently from other, non-African American employees because of his race. GTC also argues that we should not have considered Holmes's testimony regarding Stocker's discipline for sleeping because, in this instance, Stocker was not disciplined by Landes.[3] However, we did not rely on this evidence as evidence that

---

[3] We mentioned this incident five times in our previous Memorandum. See Stocker, 2020 WL 4437113, at *1, 6 n.3, 6-8. We were clear in our initial description of this incident, and our discussion of this incident in connection with Stocker's race discrimination claim, that Stocker was disciplined after he was seen by Boulay and Brooks. Id. at *1. However, we did once mention this incident along with other incidents in which Stocker was disciplined by Landes and did not make it clear that we are aware that Stocker was not disciplined by Landes in this instance. See id. at *8. To the extent it appears that we treated this discipline as having been issued by Landes, that is incorrect. We considered the evidence of this discipline, which contributed to Stocker's termination, as supporting Plaintiffs' contention that Stocker was treated differently by GTC than other GTC employees who are not African American.

**Landes** specifically discriminated against Stocker because of his race with respect to sleeping on the job, but as evidence that Stocker was treated differently by **GTC** than other employees of GTC who are not African American.  We conclude, accordingly, that we did not err in relying on Holmes's testimony regarding Stocker's discipline for sleeping on the job as evidence that he was treated differently than non-African American employees in this instance.

GTC also argues that we erred in relying on Holmes's testimony that GTC employees have their cellphones out on the shop floor 30% of the time because that testimony is too speculative. See Hallman v. PPL Corp., Civ. A. No. 11-2834, 2014 WL 349714, at *3 (E.D. Pa. Jan. 31, 2014) ("Where a defendant seeks summary judgment, the plaintiff cannot avert summary judgment with speculation, or by resting on the allegations in her pleadings, but rather she must present competent evidence from which a jury could reasonably find in her favor." (citations omitted)).  However, Holmes's testimony was not based on speculation, Holmes's testimony was based on his personal observations.  (Holmes Dep. at 39.)

GTC further argues that we erred in erred in relying on Holmes's testimony that he was not aware of any other employee who had been disciplined by Landes for loitering **while he was in his own work area** because Landes once disciplined another employee for loitering.  Landes states in his Declaration that he disciplined another GTC employee, Richard Markely, for loitering. (Landes Decl. ¶ 65.)  However, Landes does not specify in his Declaration where Mr. Markley was when he observed him for loitering.  As we are required to consider "the facts and draw all reasonable inferences in the light most favorable to . . . the party who oppose[s] summary judgment" we cannot draw an inference that Markely was in his own work station when Landes observed him loitering.  Lamont v. New Jersey, 637 F.3d 177, 179 n.1 (3d Cir. 2011) (citing Scott v. Harris, 550 U.S. 372, 378 (2007)).  Moreover, even if we could draw such an inference, we

10

cannot make credibility determinations or weigh the evidence on a motion for summary judgment and conclude, as GTC urges, that Landes, rather than Holmes, was telling the truth and that Holmes's testimony is unreliable. See Parkell v. Danberg, 833 F.3d 313, 323 (3d Cir. 2016) (noting that a court deciding a summary judgment motion "will not weigh the evidence or make credibility determinations." (quoting Armour v. Cty. of Beaver, PA, 271 F.3d 417, 420 (3d Cir. 2001)).

GTC also argues that we erred in relying on Holmes's testimony regarding Landes's disciplining Stocker for loitering because his testimony regarding those loitering incidents was hearsay. Indeed, Holmes testified at his deposition that he did not personally observe Stocker at his machine on the two days he was accused of loitering and a portion of Holmes's testimony concerned what Stocker told Holmes had occurred. However, "[i]n this circuit, hearsay statements can be considered on a motion for summary judgment if they are capable of admission at trial." Shelton v. Univ. of Med. & Dentistry of New Jersey, 223 F.3d 220, 223 n.2 (3d Cir. 2000) (citing Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)). Stocker is certainly capable of testifying at trial regarding the circumstances of his disciplines for loitering. Consequently, we conclude that we did not err in considering Holmes's testimony regarding what Stocker told him about these incidents on summary judgment.

We conclude, based on the above analysis of GTC's arguments, that we did not commit any errors of fact or law when we denied GTC's Motion for Summary Judgment with respect to Stocker's claim that he was discriminated against on the basis of his race when he was terminated by GTC. Accordingly, we deny the Motion for Reconsideration as to Stocker's race discrimination claim.

## III.  CONCLUSION

For the reasons stated above, we deny GTC's Motion for Reconsideration in its entirety. An appropriate order follows.

BY THE COURT:

/s/ John R. Padova
_____
John R. Padova, J.